UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **BRANDON CALLIER**, | § | |
| | § | |
| *Plaintiff*, | § | |
| v. | § | EP-23-CV-00273-KC-MAT |
| | § | |
| **OPTIMUM SOLAR USA and** | § | |
| **MISAEL GUZMAN,** | § | |
| | § | |
| *Defendants*. | § | |

## REPORT AND RECOMMENDATION

Before the Court is *pro se* Plaintiff Brandon Callier's ("Plaintiff") "Motion for Default Judgment" (ECF No. 12), filed on January 22, 2024. On February 13, 2024, United States District Judge Kathleen Cardone referred the motion to the undersigned for review and recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B) and Appendix C to the Local Rules of the United States District Court for the Western District of Texas. For the following reasons, the Court **RECOMMENDS** that Plaintiff's Motion for Default Judgement be **DENIED**.

**I.     BACKGROUND**

**A.   Factual Background**

This case arises from alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Plaintiff asserts that he received several[1] unauthorized calls offering solar panel installation from Defendants Optimum Solar USA and Misael Guzman ("Defendants") over the course of May 2, 2023, to May 11, 2023. Pl.'s Original Compl. ¶ 23, ECF No. 1; Mot. at 1. Plaintiff asserts he received these calls while being registered with the

---

[1] Plaintiff makes confusing statements regarding the precise number of calls he received. In his original complaint, Plaintiff states he received "at least thirteen (19) unauthorized calls," while in his Motion for Default Judgment Plaintiff asserts that he received "three nineteen (19) phone calls."

National Do Not Call List ("DNC" List). Pl.'s Original Compl. at ¶ 21. Plaintiff also asserts his cell phone is used for residential purposes. *Id.* at ¶ 49.

Plaintiff alleges that on May 2, 2023, he received three calls from the phone number 862-362-5001. *Id.* at ¶¶ 26-27. Plaintiff states that he answered the third call and "an offshore telemarketer falsely identified himself as 'Jordan from green home solar.'" *Id.* at ¶ 27. On May 5, 2024, Plaintiff alleges that he received a fourth call from the same phone number and the same offshore telemarketer identified himself. *Id.* at ¶ 28. Between May 5, 2023, and May 8, 2023, Plaintiff alleges he received 13 more calls. *Id.* at ¶ 29. Plaintiff asserts he received the eighteenth call, on May 8, 2023, which he answered. *Id.* at ¶ 30. Plaintiff claims "Jordan from green home solar" was on the call and helped him set an appointment with Optimum Solar for a solar panel consultation. *Id.* Plaintiff asserts "every alleged call Plaintiff received from the offshore telemarketer was from the phone number [ending in] 5001." *Id.* at ¶ 36. On May 9, 2023, Plaintiff alleges Defendant Misael Guzman, "the principal owner of Optimum Solar", called Plaintiff with the phone number 210-441-2733 "to verify the appointment set by the 'call center.'" *Id.* at ¶¶ 3, 32. On May 11, 2023, Plaintiff alleges that he received a text message from Defendant Guzman stating, "this is Misael from Optimum Solar. We spoke briefly a couple of days ago after my call center spoke [to you] and you mentioned that you would be getting back to me to set up appointment." *Id.* at ¶ 33.

**B.    Procedural History**

On July 21, 2023, Plaintiff filed his Original Complaint, seeking relief against Defendants under the TCPA. Pl.'s Original Compl. at ¶ 4. He requested monetary damages in the amount of $9,500 for the nineteen phone calls in violation of 47 U.S.C § 227(c) and 47

C.F.R. §64.1200(c). Mot. at 2. Additionally, Plaintiff requested $402 in filing fees, and $190 in service fees for a total of $10,092. *Id.*

The Clerk of the Court issued summons for Defendants on July 21, 2023. Summons in a Civil Action, ECF No. 2. Plaintiff filed proof of executed summons, which indicated that the summons were delivered by hand to Misael Guzman, as an individual defendant, on October 13, 2023 and to Misael Guzman, as the designated agent for Optimum Solar USA, on November 2, 2023. Proof of Service, ECF Nos. 3 & 4. Defendants had twenty-one days from service to answer, which meant that Defendant Misael Guzman's answer was due by December 4, 2023, and Defendant Optimum Solar USA's answer was due by November 24, 2023. FED. R. CIV. P. 12(a)(1)(A)(i). On January 11, 2024, after Defendants failed to timely answer or otherwise appear, Plaintiff requested entry of default against Defendants. Req. Entry Default, ECF No. 7. On January 17, 2024, the Clerk of the Court entered default against Defendants. Entry of Default, ECF No. 8. Plaintiff filed a second Corrected Motion for Default Judgment on January 22, 2024. Pl.'s Mot. Default J., ECF No. 12. To date, Defendants have not responded to the Motion or otherwise appeared in this matter.

## II.   LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure governs entry of default and default judgment. In ruling on a motion for default judgment, courts generally analyze the following three issues: (1) the procedural propriety of default judgment, (2) the substantive merits of the plaintiff's claims, and (3) the appropriate form of relief. *See RLI Ins. Co. v. 2 G Energy Sys., LLC*, 581 F. Supp. 3d 817, 823-26 (W.D. Tex. 2020); *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008).

Regarding the procedural propriety of the default, a defendant defaults if he or she fails to timely respond to the complaint. Fed. R. Civ. P. 55(a); *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). When default is shown "by affidavit or otherwise," the clerk of the court "must enter the party's default." Fed. R. Civ. P. 55(a). After entry of default, the plaintiff may seek an entry of default judgment. Fed. R. Civ. P. 55(b). Default judgment is "a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead and Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (footnotes omitted).

In deciding whether default judgment is procedurally proper, the court considers the following six factors:

> [1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are clearly established, [4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) ("*Lindsey* factors").

With regard to the substantive merits of the default judgment the court accepts the plaintiff's well-pleaded allegations as true, except regarding damages. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *U.S. for Use of M-CO Const., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Default judgment is appropriate only if the pleadings provide a "sufficient basis" for the judgment. *Nishimatsu*, 515 F.2d at 1206. In other words, "a defendant's default does not in itself warrant the court in entering a default judgment …. The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.* Courts apply the standard set in Federal Rule of Civil Procedure 8 for

the sufficient basis inquiry.[2] Courts on the Fifth Circuit have distinguished between the Rule 8 standard arising in the context of a Rule 12(b)(6) motion and a default-judgment context. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015); *see also id.* n.3 ("Although most cases addressing Rule 8 arise in the context of a Rule 12(b)(6) motion to dismiss, ... we decline to import Rule 12 standards into the default-judgment context.").

Finally, as to appropriate form of relief, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The court may conduct a hearing on a default judgment motion, as needed, to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2). A hearing on damages is required "unless the amount claimed is a liquidated sum or one capable of mathematical calculation." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

Whether default judgment is granted is discretionary with the court. "A party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Rather, the district court "has the discretion to decline to enter a default judgment." *Lindsey*, 161 F.3d at 893.

The Court must establish that jurisdiction is proper. Before it may enter default judgment, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d

---

[2] Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (footnote and citations omitted). "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

322, 324 (5th Cir. 2001) (quoting *Williams v. Life Savings & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999) (federal courts have independent duty to examine their own subject matter jurisdiction).

### III. DISCUSSION

#### A. Court's Jurisdiction

As an initial matter, the Court considers whether it has jurisdiction. "Because federal courts have limited jurisdiction, parties must make 'clear, distinct, and precise affirmative jurisdictional allegations' in their pleadings." *MidCap Media Fin., LLC v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019) (quoting *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988)). The plaintiff "bears the burden of establishing jurisdiction but is required to present only *prima facie* evidence." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006). To determine whether the plaintiff has met this burden, the court can consider the "assertions in the plaintiff's complaint," as well as "'the contents of the record at the time of the motion ....'" *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (quoting *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006)).

A federal district court has subject matter jurisdiction over a federal question arising under the Constitution, a federal law, or a treaty. *See* 28 U.S.C. § 1331. Therefore, the Court has subject-matter jurisdiction over Plaintiff's TCPA claims because the TCPA is a federal statute. *Id*.

##### 1. *General Jurisdiction*

There are two types of personal jurisdiction over defendant: general and specific. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017).

General jurisdiction for an individual is proper in the state where the individual's domicile is located. *Id.* General jurisdiction for a corporation is proper within a state "in which the corporation is fairly regarded as at home." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). Generally, a corporation is "at home" only in its place of incorporation or principal place of business. *Frank v. P.N.K. (Lake Charles) LLC*, 947 F.3d 331, 336 (5th Cir. 2020).

Plaintiff argues that this Court has general personal jurisdiction over Defendants. Mot. at 3-4. Plaintiff contends that Defendant Optimum Solar USA "is an unknown business entity operating from an address at 1812 Centre Creek Drive, Suite 215, Austin, Texas 78754" and Defendant Misael Guzman "is a resident of Texas." Pl.'s Original Compl. ¶¶ 2-3. This Court can exercise general personal jurisdiction over Defendant Misael because he is a Texas resident. However, Plaintiff has not established that Defendant Optimum Solar USA is a Texas resident. Plaintiff's characterization of Optimum Solar USA as "an unknown business entity" fails to establish personal jurisdiction. First, the Complaint alleges that Defendant Optimum Solar USA "maintains its general place of business in Texas" and "operates from an address at 1812 Centre Creek Drive, Suite 215, Austin, Texas 78754." Pl.'s Original Compl. ¶¶ 2, 5. The Complaint, however, never alleges where the company is incorporated or if the Austin location is the principal place of business. Merely engaging in "substantial, continuous, and systematic course of business" in Texas does not meet the bar to create general jurisdiction. *Daimler*, 571 U.S. at 138–39. Therefore, the Court lacks general personal jurisdiction over Defendant Optimum Solar USA.

*2. Specific Jurisdiction*

For specific jurisdiction, the suit must arise out of the defendant's contacts with the forum. *Bristol-Myers Squibb Co.*, 582 U.S. at 262. "[A] federal court may assert personal jurisdiction if the state long-arm statute permits jurisdiction and the exercise of such jurisdiction would not violate due process.... Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry reduces to only the federal due process analysis." *Conn Appliances, Inc. v. Williams*, 936 F.3d 345, 347 (5th Cir. 2019) (internal quotes and citation omitted). The analysis requires addressing whether the defendant "purposely availed himself of Texas's benefits and protections" and whether exercising personal jurisdiction over the defendant in Texas would not "offend traditional notions of fair play and substantial justice." *Id.* (citation omitted).

    a. Minimum Contacts

A court must first identify the "universe of possible jurisdictional contacts" when undertaking a minimum contacts analysis. *Bulkley & Assocs., L.L.C. v. Dep't of Indus. Rels., Div. of Occupational Safety & Health of the State of California*, 1 F.4th 346, 352 (5th Cir. 2021). Those contacts must demonstrate that a defendant "purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there." *Seiferth v. Helicopteros Atuneros Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (quotation omitted). "Mere foreseeability, standing alone, does not create jurisdiction." *Moncrief Oil International Inc. v. OAO Gazprom*, 481 F.3d 309, 313 (5th Cir. 2007). But "a nonresident can establish contact with the forum by taking purposeful and affirmative action, the effect of which is to cause business activity (foreseeable by the defendant) in the forum state." *Central Freight Lines Inc. v. APA*

*Transport Corp*, 322 F.3d 376, 382 n 6 (5th Cir. 2003) (citing *Mississippi Interstate Express Inc. v. Transpo Inc.*, 681 F.2d 1003, 1007 (5th Cir. 1982)).

Plaintiff claims Defendant Optimum Solar USA had the following contacts with Texas: (1) Defendant operates "from an address at 1812 Centre Creek Drive, Suite 215, Austin, Texas 78754;" and (2) Plaintiff received at least 19 unauthorized calls from Defendant Optimum's offshore telemarketers. Pl.'s Original Compl. ¶¶ 2,3, 23, 32-35.

"A corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Rogers v. Nat'l Car Cure, LLC*, 636 F. Supp. 3d 762, 768 (S.D. Tex. 2022) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 134 (2014)). An agency relationship is established when one party, the principal, "manifests assent" to another party, the agent, "that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Bradley v. DentalPlans.com*, 617 F. Supp. 3d 326, 338–39 (D. Md. 2022) (citation omitted). "The 'essential element' of an agency relationship is the 'principal's control over the agent's actions.' … The relevant inquiry in TCPA cases is whether the principal controlled—or had the right to control—the 'manner and means' of the telemarketing campaign." *Id.* at 339 (citation omitted).

In his Complaint, Plaintiff alleges that he "received a series of telemarketing calls from an offshore telemarketer who identified himself as "Jordan from green home solar." Pl.'s Original Compl. ¶ 24, 27. Plaintiff contends that during Defendant's eighteenth call, Jordan set an appointment for "Plaintiff with Optimum Solar for a solar panel consultation." *Id.* at ¶ 30. He adds that the next day, Defendant Misael Guzman called Plaintiff "to verify the appointment set by the 'call center.'" *Id.* at ¶ 32. Plaintiff further contends that during a Zoom meeting with Defendant Guzman "Defendant asked Plaintiff if the telemarketers were polite." *Id.* at ¶ 35.

Plaintiff has failed to allege or offer evidence that describes Defendant's day-to-day control over the actions of the offshore telemarketers to support an agency relationship. Courts have declined to find an agency relationship based on "the mere fact that telemarketing calls were made on behalf of" a party challenging jurisdiction. *Callier v. SunPath Ltd.*, No. EP-20-CV-00106-FM, 2020 WL 10285659, at *3 (W.D. Tex. Aug. 10, 2020) (holding that plaintiff failed to meet "his pleading burden to establish personal jurisdiction" because it failed to allege "the nature of the relationship [between the] entities [and the] unidentified telemarketing firm" or offer evidence that defendant "had the authority to assign tasks and control the means and details of the" telemarketer's work); *See also Cano v. Assured Auto Grp.*, No. 3:20-CV-3501-G, 2021 WL 3036933, at *10 (N.D. Tex. July 19, 2021) (holding that to show an agency relationship a defendant must make more than generic allegations to support imputing a third party's calls). Plaintiff has not made out a *prima facia* case that such an agency relationship exists to support personal jurisdiction over Defendant Optimum Solar USA. Therefore, the Court cannot recommend that default judgment be entered against Optimum Solar USA.

### 3. *Service of Process and Venue*

Lastly, Plaintiff contends that Defendants were properly served. Service may be carried out on an individual "in a judicial district of the United States by (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) … delivering a copy of the summons and of the complaint to the individual personally…." FED. R. CIV. P. 4(e). Plaintiff served a copy of the summons and complaint on Defendant Misael Guzman, as an individual and on behalf of Optimum Solar USA. *See* Proof of Service. Thus, the Court may exercise personal jurisdiction over Defendant Misael Guzman.

Venue is proper in this District because it is the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2); *see* Pl.'s Original Compl. ¶ 7. Plaintiff resides in the Western District of Texas and received all of the calls while residing in this District. *Id*.

## B.   Procedural Propriety of the Default Judgment

Next, the Court turns to the three-part test to determine whether a default judgment should be entered against Defendant Misael Guzman. The first step is to review whether the entry of default judgment is procedurally warranted considering the six *Lindsey* factors. *See Lindsey*, 161 F.3d 886, 893 (5th Cir. 1998). First, Defendant has not filed any responsive pleadings. Consequently, there are no material issues of fact at issue in the case. *See Cunningham v. Greenstar Cap. Sols.*, LLC, No. 4:18-CV-000161-ALM-CAN, 2018 WL 4572711, at *3 (E.D. Tex. Aug. 1, 2018) ("When a defendant defaults, he admits to the plaintiff's well-pleaded allegations of fact, and therefore, there are no material issues of fact.") (citation omitted), *report and recommendation adopted*, No. 4:18-CV-161, 2018 WL 4567706 (E.D. Tex. Sept. 24, 2018). Second, Plaintiff has been prejudiced and will continue to be prejudiced by the delay in this case due to Defendant's failure to timely respond, which threatens to bring the entire process to a halt. *See Lindsey*, 161 F.3d at 893. Third, the grounds for default are "clearly established" since Defendant has not responded to the summons, the entry of default, or the motion for default judgment. *See J.D. Holdings, LLC v. BD Ventures, LLC*, 766 F. Supp. 2d 109, 113 (D.D.C. 2011) (finding default judgment appropriate "if defendants are 'totally unresponsive' and the failure to respond is 'plainly willful, as reflected by the parties' failure to respond either to the summons and complaint, the entry of default, or the motion for default judgment'"). Fourth, there is no evidence that Defendant's default was caused by a good faith

mistake or excusable neglect. Fifth, default judgment against Defendant would not be unduly harsh, given that Defendant has been given notice and opportunity to respond to this action. Finally, the Court is not aware of any basis on which a court would think itself obliged to set aside Defendant's default. Therefore, since all the *Lindsey* factors are satisfied, the Court finds default judgment against Defendant Misael Guzman is procedurally appropriate.

**C. Substantive Merits**

The second step in the three-part test to determine whether a default judgment should be entered is whether there is a sufficient basis in the pleadings for the judgment. Due to the entry of default, Defendant is deemed to have admitted the allegations outlined in the Complaint. *See Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (explaining that "the defendant, by his default, admits the plaintiff's well-pleaded allegations of fact…"). Nonetheless, the Court must review the pleadings to determine whether they provide a sufficient basis for Plaintiff's claim for relief. *See id.* In conducting this analysis, the Fifth Circuit has looked to Rule 8 case law for guidance:

> Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (internal citations and footnote omitted) (alteration in original).

### *1. Violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)*

Plaintiff brings a claim under 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c). 47 U.S.C. § 227(c)(5) provides that "[a] person who has received more than one telephone call within any

12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring an action "in an appropriate court." The regulations prescribed under this subsection are codified at 47 C.F.R. § 64.1200. Title 47 C.F.R. § 64.1200(c)(2) makes it an offense to "initiate any telephone solicitation to ... [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." To show that Defendant violated this section of the TCPA, Plaintiff must show that Defendant made these calls for "telemarketing purposes." 47 C.F.R. § 64.1200(d). Telemarketing consists of the "initiation of a telephone call or message for the purpose of encouraging the purchase of … goods, or services." 47 U.S.C. § 227(a)(4). Telemarketing solicitation does not, however, include calls "to any person with that person's prior express invitation or permission." *Id.* § 227(a)(4)(A).

Courts within the Fifth Circuit have differed on the question of whether a cellular telephone can be considered a residential telephone for purposes of 47 C.F.R. § 64.1200. *Compare Callier v. GreenSky, Inc.*, No. EP-20-CV-00304-KC, 2021 WL 2688622, at *5–6 (W.D. Tex. May 10, 2021) (holding plaintiff's TCPA claim fails as a matter of law because plaintiff alleged that the calls were placed to his cell phone, not a residential line), *with Strange v. ABC Co.*, No. CV 19-1361, 2021 WL 798870, at *3 (W.D. La. Mar. 1, 2021) (explaining that with sufficient proof that plaintiff used his cell phone for residential purposes and "register[ing] their cell phones with do-not-call registries are presumed to be residential subscribers"). However, there is no "binding precedent that would foreclose Plaintiff's allegations, as pleaded, under the TCPA." *Myrick v. Adapthealth, LLC*, No. 6:22-CV-00484-JDK, 2023 WL 5162396, at *2 (E.D. Tex. June 26, 2023)(holding that plaintiff's cell phone that was registered with the DNC

list qualified him as a residential telephone subscriber), *report and recommendation adopted*, No. 6:22-CV-484-JDK, 2023 WL 4488848 (E.D. Tex. July 12, 2023).  Further, the Federal Communications Commission has arguably "extended the full coverage of the TCPA to cell phones." *Id.* at *3 (*citing In re Rules & Reguls. Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, 14039, 2003 WL 21517853 (FCC June 26, 2003)).  This Court agrees with courts in the Fifth Circuit that have held that a cellular telephone number qualifies as a residential number under the TCPA if the plaintiff alleges sufficient facts to make it clear that his cellular telephone is used for residential purposes. *See id.*; *Strange*, 2021 WL 798870, at *4; *Hunsinger v. Alpha Cash Buyers, LLC*, No. 3:21-CV-1598-D, 2022 WL 562761, at *3 (N.D. Tex. Feb. 24, 2022).

Plaintiff asserts that his cell phone is a residential number.  Pl.'s Original Compl. ¶ 49.  He asserts that his cell phone is used "for personal, family, and household use" as he "maintains no landline [phone] at his residence and has not done so for at least 16 years."  *Id.* Plaintiff further contends his cell phone is the primary way that he contacts "friends and family."  *Id.* He also states that this phone is "registered in his personal name" and paid for "from his personal accounts."  *Id.* The phone was registered on the National Do-Not-Call registry during the relevant time period.  Pl.'s Original Compl. ¶¶ 21, 42.

Plaintiff contends that he received "at least nineteen unauthorized calls" in a 12-month period.  *Id.* at ¶ 23.  However, Plaintiff alleges that out of the 19 calls, 18 calls were made by an offshore telemarketer.  *Id.* at ¶¶ 26-30.  He states that the nineteenth and final call was made by "Defendant Guzman … to verify the appointment set by the 'call center.'"  *Id.* at ¶ 32.  At the outset, Plaintiff concedes that he "set an appointment with 'Jordan,' [the telemarketer], after receiving approximately 18 phone calls…."  *Id.* at ¶ 31.  As noted above, telephone solicitations as defined in the TCPA do not include calls made with prior express permission or invitation of a

residential telephone subscriber. *See* 47 U.S.C. § 227(a)(3); 47 C.F.R. § 64.1200(f)(3). The term "express permission or invitation" is not defined in statutory language. The Federal Communications Commission ("FCC"), however, has provided guidance stating:

> there is no indication that Congress intended that calls be excepted from telephone solicitation restrictions unless the residential subscriber has (a) clearly stated that the telemarketer may call, and (b) clearly expressed an understanding that the telemarketer's subsequent call will be made for the purpose of encouraging the purchase or rental of, or investment in, property, goods or services.

*In the Matter of Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12396 (1995). In this case, Plaintiff asserts that Jordan scheduled an appointment for Plaintiff "for a solar panel consultation." Pl.'s Original Compl. ¶¶ 30-31. Accordingly, the Court finds that Plaintiff setting an appointment with the telemarketer constitutes an invitation for a telephone solicitation from Defendant Guzman. The Court, therefore, finds that Plaintiff cannot prevail under Section 227(c)(5) because Plaintiff has not pleaded enough to establish a sufficient basis for default judgment for the calls received from Defendant Guzman.

**D. Entitlement to Damages**

Finally, the Court must determine whether a specific amount of damages can be determined with "mathematical calculation by reference to information in the pleadings and supporting documents." *Ramsey v. Delray Capital LLC*, No. 3:14-CV-3910-B, 2016 WL 1701966, at *3 (N.D. Tex. Apr. 28, 2016) (citing *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)). For his claims based solely upon § 227(c) of the TCPA, Plaintiff seeks damages in the amount of $10,092.00, which includes statutory damages of $500 per call for nineteen violations, $402 for filing fees, and $190 for service fees. Mot. at 8-9.

Title 47 U.S.C. § 227(c)(5) authorizes private right of action under the TCPA. Under the subsection, an individual can file suit to recover his actual monetary losses or to receive $500 in

damages for each violation.  47 U.S.C. § 227(c)(5)(B).  While the subsection also contains provisions allowing for treble damages if the defendants' violations are willful and knowing, Plaintiff asserts he "is not seeking treble damages in this case."  Mot. at 8.

In his motion, Plaintiff contends he is entitled to statutory damages for "19 phone calls." *Id.*  Based upon his default motion, affidavit, and allegations in his complaint, Plaintiff has shown that of the nineteen calls received by Plaintiff, Defendant Misael Guzman made only one call—the nineteenth call.  However, this single call by Guzman was done with Plaintiff's express invitation and permission and is therefore not in violation of § 227(c) of the TCPA.  *See John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) ("Any doubt as to whether to enter or set aside a default judgment must be resolved in favor of the defaulting party.").  Thus, Plaintiff has failed to show that he is entitled to damages under the TCPA.

## V.   CONCLUSION

For these reasons, the Court **RECOMMENDS** that Plaintiff's Motion for Default Judgment be **DENIED.**

**SIGNED** and **ENTERED** this   21st   day of March, 2024.

_____
**MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE**

### NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING**

- 17 -

**REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**